IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOHN BRILEY                                          PETITIONER
ADC #121521

V.                        NO. 5:05CV00098 SWW/JWC

LARRY NORRIS, Director,                              RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.
2.    Why the evidence proffered at the hearing before the District Judge (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

John Briley, an Arkansas Department of Correction (ADC) inmate, brings this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2), challenging two prison disciplinary decisions.  Respondent has filed a response (docket entry #8), to which Petitioner replied (docket entries #12, #17, #23).   For the reasons that follow, the petition should be dismissed.

I.

Petitioner is serving a twenty-year prison sentence in the ADC for manufacturing, delivery or possession of methamphetamine with intent to deliver, attempted manufacturing of methamphetamine, and fleeing. (Resp't Ex. A, B.)[1]  He entered the ADC on December 3, 2001.  (Resp't Ex. C.)

---

[1] Respondent's exhibits are attached to docket entry #8; Petitioner's exhibits are attached to docket entries #2, #7, #12, #17 and #23, as indicated.

On October 5, 2004, Sgt. Robert Nowden wrote a major disciplinary against Petitioner, charging him with possessing money or currency, possessing unauthorized property, and failing to obey staff orders.  According to the charge, Nowden found in Petitioner's sock on his right leg a plastic bag of loose tobacco, a pack of tobacco, and cigarette rolling papers.  Nowden stated that he then searched Petitioner's property and found, under his mattress, a ten dollar bill, a cigarette lighter and ten plastic bags, and, in his locker box, forty packs of tobacco and forty packs of cigarette rolling papers.  A variety of cleaning products and items were found under his rack.  The charge states that, as of January 17, 2000, all tobacco products were banned from the Tucker Unit.  At a disciplinary hearing on October 8, 2004, Petitioner stated that he "never got rules" and that the tobacco was found in a sack in the sink, where others had put things.  He said the tobacco items were not his and that he was not there when the cell was searched.  He said he had the cleaning items because he was the porter.  The hearing officer found Petitioner guilty on all charges.  As punishment, Petitioner was sentenced to thirty days in punitive isolation and his classification level was reduced from Class I-C to Class IV.  He appealed to the disciplinary hearing administrator, then to the ADC director, with the disciplinary decision being affirmed at both levels.  (Resp't Ex. D.)

On December 28, 2004, Sgt. Nowden wrote a second major disciplinary against Petitioner, again charging him with possession of unauthorized property and failure to obey staff orders.  Nowden stated that, during a strip-search, he found on Petitioner a plastic bag containing tobacco, cigarette papers and a cigarette lighter.  Nowden said he found these items between Petitioner's underwear and his thermal bottoms.  At a disciplinary hearing on January 3, 2005, Petitioner stated that information from an Officer Reed would

3

conflict with Nowden's charge.  He said that Nowden had him fill out a blank confiscation form and sign it.  Petitioner was found guilty of both violations, sentenced to thirty days in punitive isolation, and reduced from Class III to Class IV.  (Resp't Ex. E.)  Although neither party has submitted evidence of the ADC director's decision, Petitioner contends that he fully exhausted his administrative appeals regarding this disciplinary decision, which Respondent does not dispute.

On October 26, 2005, Petitioner filed a complaint for declaratory judgment and injunctive relief in the Jefferson County Circuit Court, alleging: (1) the prosecutor breached a pretrial agreement not to seek sentencing as a habitual offender; (2) he was denied credit on his sentence for time spent in jail and for meritorious good time; (3) prison officials interfered with his access to the courts; (4) he was denied due process in disciplinary proceedings; (5) prison officials retaliated against him for his litigation and grievance activities, denying him due process; (6) he was denied due process by the reduction of his custody classification level, resulting in the loss of good time credits; (7) prison officials subjected him to additional retaliatory acts, interfered with legal process, and discriminated against him on the basis of race; and (8) the ADC enacted its rule banning tobacco products in violation of state law, failed to give proper notice of the rule and enforces the rule in a racially discriminatory manner.  (Pet'r Ex. A to docket entry #23.)  The complaint was dismissed for failure to obtain proper service.  Briley v. Norris, No. CV-2005-815-5 (Jefferson Co. Cir. Ct. Mar. 3, 2006) (Pet'r Ex. W to docket entry #23.)   There is no evidence or allegation of an appeal.

In this federal habeas action,[2] Petitioner challenges the validity of the October 2004 and January 2005 disciplinary decisions, and he contends that the disciplinary hearings were conducted in a perfunctory manner and inconsistent with ADC rules and regulations, state law, and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.  He says that, as a result of the class reduction imposed, he has been denied the ability to earn good-time credit, he has lost one to four years of good-time credit, the duration of his confinement has been extended unequally and without due process, and he has been rendered ineligible for rehabilitative programs.

Specifically, Petitioner says he was not provided adequate notice of what evidence was to be used against him, he was not allowed to attend the disciplinary hearings except to give his statement, he was not allowed to call any witnesses, he was unable to formulate a defense because all evidence used against him was withheld and concealed, and he was not allowed a copy of the ADC rules and regulations regarding prohibited conduct or disciplinary hearings so that he could ensure that he was receiving procedural due process. He says that, before each hearing, he was told to pack his property and an isolation cell was cleared, implying that his guilt was predetermined.

Regarding the October disciplinary, he says the evidence was insufficient to support the decision because the alleged contraband was found in his old barracks after he and his property had been moved to a separate part of the prison, and that other inmates had access to the cell after he was moved.  He says the hearing was unfair and one-sided.  He

---

[2]Petitioner incorrectly asserts that this petition is properly brought pursuant to 28 U.S.C. § 2241 (docket entry #2, at 2).  Where a habeas petitioner is in custody pursuant to a state-court judgment (as Petitioner is), he "can only obtain habeas relief through § 2254, no matter how his pleadings are styled." Crouch v. Norris, 251 F.3d 720, 723 (8th Cir. 2001).  The petition has, therefore, been construed as being brought pursuant to § 2254.

says that, before he received the disciplinary, he had been helping an inmate with legal work and a civil complaint against Nowden and another officer and had declined to provide the officers with information about the inmate.

As to the January disciplinary determination, Petitioner says the charge was written in retaliation after he had submitted a grievance about an arbitrary shakedown of his cell by Nowden and after he had again declined to become an informant.  He says that Nowden searched his cell, found no contraband on Petitioner or in his property, and ordered him to sign three confiscation forms reflecting that no contraband was found.  He says that, the next morning, he was served with an altered confiscation form showing that Nowden had confiscated tobacco and a lighter.  Petitioner says he was not allowed to call Officer Reed to testify at the hearing about the earlier confiscation forms.

Petitioner says he has never been notified by the ADC that possession of tobacco is prohibited because he was not given a copy of the ADC rules and regulations upon admission, and the policy has never been posted.  He says the majority of employees and inmates use tobacco, and that the no-tobacco policy is arbitrarily and selectively enforced.  He also contends that the no-tobacco policy is an invalid rule because it fails to comply with provisions of the Arkansas Administrative Procedures Act.  Petitioner also alleges that his parole eligibility date has been altered several times without cause or notice, and that ADC officials have not responded to his requests for clarification.  He says officials will not inform him how much good time he has lost.

As relief, his petition seeks an order directing the ADC to reinstate all lost good-time credits and to return him to Class I-C status.  In a subsequent pleading, Petitioner asks for judgment declaring him to be credited with "all pretrial and post-trial liberty restraint,"

6

declaring the ADC's no-tobacco policy to be unlawful, declaring both disciplinary proceedings unconstitutional, vacating all disciplinary information from his institutional file, and crediting "all good-time to which he is lawfully entitled" (docket entry #17, at 14).

## II.

Respondent argues, first, that Petitioner's claims should be dismissed without prejudice because he has failed to exhaust his state remedies by seeking judicial review of the disciplinary decisions in state court. Alternatively, Respondent argues that Petitioner's due process claims are without merit.

In reply to the exhaustion argument (docket entries #12, #23), Petitioner submitted documentation showing that he had filed a state-court complaint raising the same allegations, which was dismissed.  He also argues that the state-court remedies cited by Respondent are either unavailable or ineffective to afford him review of the issues raised. See 28 U.S.C. § 2254(b)(1) (exhaustion requirement excused where "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant").  The Court need not determine whether Arkansas provides a viable process for adjudicating Petitioner's claims because it is clear from the record, as explained below, that he is not entitled to federal habeas relief.  See id. § 2254(b)(2) (habeas application "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

## III.

As stated, Petitioner alleges that by reducing him to Class IV, ADC officials have deprived him of the opportunity to earn good-time credits, which in turn affects the date he

becomes eligible for parole or transfer to less restrictive placement within the Department of Community Correction (DCC), thereby extending the duration of his confinement.  He claims that this violates ADC policy, state law, and the Due Process Clause of the United States Constitution.

A federal court may issue a writ of habeas corpus only for a violation of the Constitution, laws or treaties of the United States.  28 U.S.C. §§ 2241(c), 2254(a).  There is no federal constitutional interest in having state officers follow state law or prison officials follow prison regulations.  Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003).  Therefore, regardless of whether any state laws or ADC rules or regulations have been violated, this Court is limited to determining whether a federal violation has occurred.

The Fourteenth Amendment to the Constitution provides in part that no state shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  Protected liberty interests may arise from the Due Process Clause itself or from state laws or policies.  Wilkinson v. Austin, 125 S. Ct. 2384, 2393 (2005).

The United States Constitution does not, itself, create a protected liberty interest in any particular prisoner classification or eligibility for rehabilitative programs, Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); in good-time credit for satisfactory behavior while in prison, Wolff v. McDonnell, 418 U.S. 539, 557 (1974); or in the possibility of parole or release before expiration of a validly imposed sentence, Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979).   Liberty interests arising from state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions

which "inevitably affect the duration of [a prisoner's] sentence." Sandin v. Conner, 515 U.S. 472, 484, 487 (1995).

Under the applicable Arkansas statutes, the Board of Corrections is granted broad discretion in classifying ADC inmates according to "good behavior, good discipline, medical condition, job responsibilities, and involvement in rehabilitative activities." Ark. Code Ann. § 12-29-202(a)(3) (2003 & 2005 Supp.). Inmates may be reclassified "as often as the [classification] committee deems necessary ... to maintain good discipline, order, and efficiency at the units, facilities, or centers." Id. § 12-29-202(c). Nothing in these statutes provides a basis for finding a protected liberty interest in the classification level assigned to an inmate by prison officials. Madewell v. Roberts, 909 F.2d 1203, 1207 (8th Cir. 1990) (ADC inmate has no right to consideration of Class I status); Strickland v. Dyer, 628 F. Supp. 180, 181 (E.D. Ark. 1986) (because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, ADC prisoner could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction).

Adjustments in classification as a result of disciplinary infractions are certainly an expected component of prison life and do not "present a dramatic departure from the basic conditions of [an inmate's] sentence." Sandin, 515 U.S. at 485. Additionally, a class reduction does not "inevitably affect the duration of [an inmate's] sentence" under Sandin. Petitioner argues that the class reduction deprived him of the opportunity to earn good-time, thereby delaying his parole and transfer eligibility dates and extending the time he will be incarcerated. However, under Arkansas law, meritorious good time does not reduce the length of an inmate's original *sentence* as imposed by the trial court and, instead, only

affects the date he becomes eligible for transfer to a less restrictive setting, which may include parole.  Ark. Code Ann. § 12-29-201(a), (d) & (e); <u>see</u> <u>McKinnon v. Norris</u>, ___ S.W.3d ___, 2006 WL 564079 (Ark. Sup. Ct. Mar. 9, 2006) (publication pending); <u>Richmond v. Duke</u>, 909 F. Supp. 626, 630-31 (E.D. Ark. 1995).

The disciplinary hearing officer had discretion in determining the appropriate punishment for Petitioner from a range of allowable sanctions, and class reduction was not mandated by any statute or ADC policy.  <u>See</u> ADC Adm. Reg. 831(VI)(F)(1) & (G)(1)(a-h) (docket entry #2, at 175-76).  Moreover, classification decisions are based on a variety of factors, aside from disciplinary penalties, and are subject to frequent adjustment throughout the period of incarceration.  As explained below, the awarding of good-time credits is also discretionary, as are decisions regarding if or when to parole a prisoner or transfer him to DCC supervision.  At each stage, the prisoner is afforded procedural opportunities to challenge the determinations made.  The chance that one class reduction "will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."  <u>Sandin</u>, 515 U.S. at 487.  Therefore, Petitioner's demotion to Class IV does not give rise to a protected liberty interest under federal or state law.

Petitioner argues that the Arkansas statutes create a liberty interest in meritorious good time, that he was automatically issued meritorious good time at classification levels I-III, and that the reduction to Class IV thus deprived him of a state-created liberty interest in earning meritorious good time.

In <u>Wolff v. McDonnell</u>, the United States Supreme Court held that a liberty interest was created by a Nebraska statutory provision authorizing a right to a shortened prison sentence through the accumulation of good-time credits, where the credits could be

10

forfeited only for serious misbehavior. <u>Wolff</u>, 418 U.S. at 557. Therefore, under <u>Wolff</u> and its progeny, before being subjected to the loss of good-time credits, an inmate must be given certain procedural due process protections: written notice of the claimed violation, an opportunity to call witnesses and present documentary evidence in his defense, and a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action. <u>Id.</u> at 564-66. Due process also requires that the record contain "some evidence" to support the prison disciplinary decision. <u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56 (1985).

Based on their level of classification, ADC inmates may earn up to thirty days of "meritorious good time reducing his or her transfer eligibility date" for each month of incarceration. Ark. Code Ann. § 12-29-201(a); <u>see also</u> <u>id.</u> §§ 12-29-202(b)(1), 12-29-204. Inmates who are reduced to the lowest class (Class IV) as a result of disciplinary action "shall not be entitled to earn meritorious good time." <u>Id.</u> § 12-29-202(b)(2). All or part of an inmate's accrued good time may be taken away by the ADC for infraction of prison rules. <u>Id.</u> § 12-29-203(a). However, these statutes do not provide an absolute entitlement to good time, stating only that an inmate "*may* be entitled" to meritorious good time, <u>id.</u> § 12-29-201(a)(1), and that an inmate who maintains a high classification "*may* earn" credit toward reduction of his transfer eligibility date, <u>id.</u> § 12-29-202(b)(1).

Furthermore, the statute plainly states that "[m]eritorious good time will not be applied to reduce the length of a sentence." <u>Id.</u> § 12-29-201(d). Therefore, although good time affects the date that an inmate may become eligible for parole or transfer to less restrictive conditions, it has no effect on the length of the sentence imposed by the trial court. In a recent case, the Arkansas Supreme Court rejected a prisoner's claim that the

11

class reduction he received as a disciplinary penalty, which made him ineligible to gain credit for statutory meritorious good time, constituted the deprivation of a state-created liberty interest without due process.  McKinnon, supra.  The court stated: "[M]eritorious good time does not apply to reduce the length of a sentence as noted above.  As a result, Arkansas has not created a liberty interest in good time under the constitutional analysis in Wolff v. McDonnell."  McKinnon, supra; see also Bayless v. Beck, No. 04-69, 2005 WL 1411656, *2 (Ark. Sup. Ct. June 16, 2005) (unpub.) (no due process claim regarding prison disciplinary proceedings because "Arkansas has not created a liberty interest in good time").  The state "retains the authority to interpret the scope and availability of any state-conferred right or interest."  Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir. 1997).

Like the inmate in McKinnon, there is no evidence that Petitioner lost more than the *opportunity* to earn further good-time credits due to a class reduction.  As stated, the punishment imposed for each of his challenged disciplinary convictions was thirty days in isolation and a reduction in class to Class IV.  (Resp't Ex. D, E.)  No loss of earned good-time is noted.  Although Petitioner states that the hearing officer "orally sanctioned" him at the October 2004 hearing with the loss of 365 days of earned good time (docket entry #17, at 5), this is not supported by any of the records from the disciplinary proceedings.[3]

The October 2004 disciplinary report's section for "Disciplinary Hearing Action" states: "Punitive Isolation Days to Serve: 30; Days Suspended: 0; GT Class Reduced to: IV; Class Suspended: (Blank)."  (Resp't Ex. D.)  Nor is any loss of good-time reflected on

---

[3]It is also noteworthy that Petitioner did not mention an oral sanction in his original petition, but only made this allegation after Respondent raised the argument that loss of the opportunity to earn good time, as opposed to the loss of earned good time, did not constitute a protected liberty interest.

a separate computer-generated "Inmate Record Summary" from the ADC, dated May 3, 2005.  (Resp't Ex. C.)  This record shows all "Approved Disciplinary Violations" during Petitioner's incarceration and the punishment imposed for each.  For the October 2004 disciplinary conviction at issue, the penalty shown is "Isolation to be served for 30 days; GT Class Reduction to IV."  In contrast, a disciplinary conviction on January 30, 2002, shows the additional notation: "Good Time Forfeited - 60 days."  Similarly, the section on "Sentence Credits/Debits" shows "GT Class Reduction" with a zero in the column for "GT Days" as to the October 2004 disciplinary penalty, but shows "GT Class Reduction" and "GT Forfeited," with "60" in the "GT Days" column for the January 2002 disciplinary. Therefore, even if the October 2004 disciplinary hearing officer referred to a loss of earned good time, no such penalty was memorialized in the officer's final report or applied as a debit to Petitioner's sentence or term of incarceration.

Restricting an inmate's ability to earn future meritorious good-time credits as a disciplinary sanction is a typical and not unexpected occurrence in the prison environment. Moreover, because awarding of good-time credits is discretionary, only affects an inmate's parole or transfer eligibility date, and does not reduce his sentence, it cannot be said that good-time ineligibility inevitably affects the duration of an inmate's sentence, as contemplated by Sandin.  Additionally, this case is distinguishable from Wolff because it did not involve the deprivation of accumulated good-time credits, but only precluded Petitioner from earning any additional good-time credits until he was able to advance out of Class IV.  It is speculative to presume that, without the disciplinary decisions in question, Petitioner would have maintained his Class I-C status and continued to earn good-time

credits at the maximum rate to be applied toward his eligibility dates.  Therefore, Petitioner has no state-created liberty interest in earning future meritorious good time.

Finally, nothing in the Arkansas statutes governing parole and transfer eligibility creates anything more than a mere possibility of parole, and thus the statutes do not establish any right to release on parole which would invoke due process protection. Pittman v. Gaines, 905 F.2d 199, 201 (8th Cir. 1990); Parker v. Corrothers, 750 F.2d 653, 655-57 (8th Cir. 1984); Robinson v. Mabry, 476 F. Supp. 1022, 1023 (E.D. Ark. 1979); see Board of Pardons v. Allen, 482 U.S. 369, 378 n.10 (1987).  Instead, the statutes place minimal limitations on the Board's discretion and provide that the Board "may" grant parole when, in its opinion, there is a reasonable probability that a prisoner can be released without detriment to the community or himself.  Ark. Code Ann. § 16-93-701(a)(1).  The statutes also clearly provide for discretion on the part of the Board in determining if or when a particular inmate will be paroled or transferred from the ADC to DCC supervision.  Id. §§ 16-93-206(a)(1), 16-93-1208(a), 16-93-1302.  The statutes regarding transfer eligibility expressly state that "[n]othing in this subchapter shall grant any offender the right to be sentenced or transferred ... as a matter of right."  Id. § 16-93-1210.

The Arkansas Supreme Court has emphasized the broad discretionary authority granted to the Board under the state's parole and transfer eligibility statutes.  Michalek v. Lockhart, 730 S.W.2d 210, 211 (Ark. 1987); see Dougan v. Ford, No. 04-623, 2005 WL 2387576, *2 (Ark. Sup. Ct. Sept. 29, 2005) ("If the conditions [set by the Board] are too onerous, appellant could decline to accept the conditions set, and elect to serve out his sentence instead."); Hodges v. Norris, No. 02-786, 2004 WL 439982, *2 (Ark. Sup. Ct. Mar. 11, 2004) (unpub. op.) (citing § 16-93-1210 and stating, "Transfer for parole is not a matter

14

of right."); <u>Maxie v. Gaines</u>, No. 94-313, 1994 WL 571967, *1 (Ark. Sup. Ct. Oct. 10, 1994)

("the statute which provides in pertinent part that the parole board may release an eligible

prisoner under certain conditions ... does not create a liberty interest in parole; that is, the

board's determinations regarding parole are discretionary").

When a prisoner is committed to the custody of a state penal authority, such as the

ADC, "he can be assured of only one thing – that he will be released from the State's

custody at the end of the term of years specified by the sentencing court." <u>Richmond</u>, 909

F. Supp. at 631.  Therefore, Petitioner has no federal or state liberty interest in his class

status, the opportunity to earn good-time credits, or the possibility of obtaining parole or

transfer eligibility, and his due process claims related to the October 2004 and January

2005 disciplinary decisions must fail.[4]

Petitioner also alleges that both of the disciplinary charges were made in retaliation

for his helping another inmate with legal work and for utilizing the prison grievance system

himself.  Prison officials may not impose a disciplinary sanction against a prison inmate in

retaliation for the prisoner's exercise of a constitutional right.  <u>Goff v. Burton</u>, 7 F.3d 734,

738 (8th Cir. 1993).  However, inmates do not possess a constitutionally protected right to

provide legal assistance to fellow inmates.  <u>Shaw v. Murphy</u>, 532 U.S. 223, 225 (2001);

<u>Gassler v. Rayl</u>, 862 F.2d 706, 708 (8th Cir. 1988) (no actionable claim against prison

officials for allegedly retaliating against inmate for writwriting activities).

---

[4]Petitioner does not allege that a liberty interest was created by his thirty-day segregation term, and the Eighth Circuit has consistently held that administrative and disciplinary segregation are not the kind of "atypical and significant" deprivations that create a liberty interest under <u>Sandin</u>.  <u>See, e.g.</u>, <u>Phillips</u>, 320 F.3d at 847; <u>Portley-El v. Brill</u>, 288 F.3d 1063, 1065-66 (8th Cir. 2002).

Furthermore, where a disciplinary committee finding meets the "some evidence" standard set forth in Superintendent v. Hill, the finding "essentially checkmates" an inmate's claim that a disciplinary charge was written in retaliation for his own litigation activities. Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994); see Moore v. Plaster, 313 F.3d 442, 444 (8th Cir. 2002) (retaliatory discipline claims fail if the alleged disciplinary was issued for the actual violation of a prison rule). This limited review by federal courts does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing of the evidence. Hill, 472 U.S. at 455. A witnessing officer's violation report is "some evidence." Id. at 456; Earnest v. Courtney, 64 F.3d 365, 367 (8th Cir. 1995); Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990); Rudd v. Sargent, 866 F.2d 260, 262 (8th Cir. 1989).

The disciplinary records show that the decisions at issue were based on the report of the charging officer, the actual contraband seized or photographs of it, and the confiscation reports. (Resp't D, E.) Petitioner had a hearing before a separate hearing officer and multiple appeals, where he had the opportunity to assert any allegations of retaliation and question the charging officer's credibility and motive. (See docket entry #2, at 78-80, 82-94 [disciplinary appeals raising claims of retaliation and harassment by charging officer].) At all levels, the officer's report that Petitioner was in possession of contraband was accepted. At one point in his disciplinary appeals, Petitioner admitted that he was "forced by his environment and addiction [to tobacco] to engage in the prison barter system in tobacco to survive," indicating that he actually was in possession of contraband as charged (docket entry #2, at 49). This is sufficient to satisfy Hill's lenient standard, thereby defeating Petitioner's claim of retaliation.

16

IV.

Petitioner also complains about the ADC's repeated alterations of his parole/transfer eligibility date, ADC officials' refusal to clarify the date with any certainty, the ADC's refusal to credit him with all time he spent in jail prior to entering the ADC, and the ADC's enactment of an invalid no-tobacco policy.

A state prisoner does not have any federal constitutional right to have specific release and parole eligibility dates calculated. Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir.1993); see Smith v. Norris, 40 Fed. Appx. 305 (8th Cir. 2002). Additionally, nothing in the United States Constitution or the Arkansas statutes restrains the ADC from periodically recalculating a prisoner's parole or transfer eligibility date. See Jago v. Van Curen, 454 U.S. 14, 17-21 (1981) (no due process protections required before rescission of previously granted parole date). In any event, the time computation cards that Petitioner submitted here clearly state that the transfer eligibility and release dates listed "are only a projection and include all good time which can be earned based on your current class," and that, if all projected good time is not earned, these dates "will change" (docket entry #2, at 195, 198; Pet'r Ex. N to docket entry #7). See also ADC Adm. Reg. 803(V)(A)(C) (stating that transfer eligibility date "may be extended based on disciplinary behavior while under commitment to the [ADC]") (docket entry #2, at 180-81).

Next, a state prisoner's right to credit for time served is a question of state law, not cognizable in federal habeas proceedings. Travis v. Lockhart, 925 F.2d 1095, 1097 (8th Cir. 1991) (interpretation of state crediting statues is a matter of state concern and not a proper function of a federal court under federal habeas corpus jurisdiction).

These claims should be dismissed as failing to state a federal constitutional claim.

17

Petitioner's complaints about the validity of the ADC's no-tobacco policy appear to be based solely on state law, with no allegations about a federal constitutional violation. Furthermore, these claims are not the proper subject of a § 2254 federal habeas petition. The United States Supreme Court has repeatedly emphasized "the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement – either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson v. Dotson, 125 S. Ct. 1242, 1247 (2005).  A civil rights complaint under 42 U.S.C. § 1983, on the other hand, "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."  Preiser v. Rodriguez, 411 U.S. 475, 499 (1973).

A determination that the ADC policy was invalidly promulgated under state law does not necessarily imply that Petitioner is being unconstitutionally restrained.  Petitioner suggests that, because the prison rule he was found guilty of violating is invalid, his disciplinary decisions (along with those of "thousands" of other ADC prisoners also wrongly convicted) should be overturned, which would restore him to his former classification, require him to be credited with all good time he would have earned at that classification, accelerate his transfer eligibility date, and thus shorten the duration of his confinement. This string of assumptions presents too many variables for his challenge to the ADC rule

to constitute either a direct or indirect attack on the validity of his current custody.[5]  Instead, it is more properly framed as a § 1983 complaint related to the conditions of his confinement.  See Khaimov v. Crist, 297 F.3d 783, 785-86 (8th Cir. 2002) (finding that habeas petitioner's claims regarding prison mail and segregation were improperly brought under § 2254).

Petitioner is barred by the "three-strikes" provision of the Prison Litigation Reform Act from bringing an in forma pauperis civil rights complaint under § 1983.  See 28 U.S.C. § 1915(g) (requiring dismissal of in forma pauperis complaint where prisoner has had three or more previous complaints dismissed as frivolous, malicious, or failing to state a claim); Briley v. Jonak, et al., No. 5:05cv00089, at #5, #70, #71 (E.D. Ark. Nov. 30, 2005) (dismissing Petitioner's in forma pauperis § 1983 complaint pursuant to § 1915(g); concluding that Petitioner had amassed five "strikes").  Petitioner should not be permitted to use a habeas action to circumvent the statutory restrictions on the abusive filing of frivolous § 1983 complaints.

V.

For the reasons set forth above, this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2) should be dismissed in its entirety, with prejudice.

DATED this 5th day of September, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5]In fact, because Petitioner did not lose any earned good time as a result of the disciplinaries at issue, it is questionable whether either of the decisions had any effect on the fact or duration of his confinement and thus whether any of his claims are the proper subject of a habeas petition.  Respondent did not, however, argue for dismissal on this basis, and sufficient grounds exist for dismissal as set forth herein.